All rise. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and His Honorable Court. You may be seated. Good afternoon, everyone. We just have one case on our docket for this afternoon. And I know we have some experienced attorneys here who are familiar with our lighting system and our rules. So I'll call the case, and you may proceed when you're ready. This is case number 23-11589, Donald E. Deardorff v. Warden. You may begin, sir. Thank you. May it please the Court of Counsel, I represent Donald Deardorff, but if just two words in the accusatory codicil at issue in this case were different, I would be here representing Millard Peacock. Instead, Millard Peacock is a free man, and Donald Deardorff sits on death row. Admission of the accusatory codicil against Mr. Deardorff through four witnesses, and as two substantive exhibits, violated Mr. Deardorff's right to confront the witnesses against him under the Sixth Amendment. And the law is clear. Crawford, Street, even Roberts. The last reason state court decision did not reach the prejudice prong on the ineffective assistance of counsel claim, but instead dismissed on the deficient performance prong, concluding that no confrontation clause issue existed, quote, because evidence relating to the notation on the will was not offered for the truth of the matter asserted. However, what the state argued in their closing argument before the jury was he named the man he thought might do evil to him. And I submit to you that's what he has left in his will and why he left it. Just in case Donald Deardorff is as crazy as I think he is. That's a message. That's the man I fear. It was so significant to him that he put it down. And ladies and gentlemen of the jury, he didn't just put it down. He wrote it in red. You can't miss it. It's designed so you can't miss it. Now, deny relief. The rule 30. The last reason state court decision concluded simply that hearsay evidence or that hearsay evidence, evidence not offered for the truth of the matter asserted can never implicate the confrontation clause, which is squarely against the precedent in street. Can I ask you let me ask you a preliminary question. Whether the statement in the carousel was admitted for the truth of the matter, is that a question of fact or a question of law? I believe it's a mixed question. And the reason I say that is because it's not finding credibility of a witness. It's trying to assess what on the face of the record was the impact of this. And so our position would be that it was an unreasonable determination of fact. But regardless, it was an unreasonable determination of fact in light of the record as a whole, which is how the court was supposed to look at it under Strickland. In light of the record as a whole, it was an unreasonable determination to find that this was simply admitted to show investigative progress. Do you happen to have any authority that says that? Not directly. I couldn't find any. Yeah, not directly off the top of my head, Your Honor. All right. Thank you. And it may be an issue of first impression in that regard. But I do believe that if one were to look at the record as a whole, as Strickland calls for us to do, that you will see that despite whether or not, and as the district court found, whether or not introduction of the statement itself, the accused in her carousel itself, was independently a confrontation clause violation completely on its own, or whether it was the arguments themselves and the lack of limiting instruction that mattered, ultimately when you look at it, you look at the totality of the circumstances and you see what the state was doing here. And it's clear what the state was doing here. They were giving you a witness from beyond the grave. The only person who was not, as I believe the state said, it didn't surface from some drug dealer from Miami, Florida. It didn't surface from some thug in county. It didn't surface from David Whetstone, who happens to be the district attorney who was making that argument. It surfaced from Ted Turner. And then in rebuttal closing, he said, what do we have on Donald Deardorff that points to him? You have Ted Turner's will naming, and then it cuts off, but naming him. And what did Mr. Turner tell the jury? Mr. Turner told the jury, reaffirm 72999, just in case Don Deardorff is really crazy. Again. So the scope, though, of the COA is we're dealing with the ineffective assistance claim. So we have the ACCA that determined on direct appeal that the will was not hearsay. So how does the ineffective assistance of counsel claim not necessarily fail because counsel is not ineffective for failing to raise a meritless objection? So technically, actually, on direct appeal, what the court of criminal appeals addressed were the four witnesses who testified about the will. And it's actually interesting. If you look at the CCA's opinion, they don't make mention of the will at all. They talk about testimony concerning the will not being offered for the truth of the matter asserted, which may very well be true. But I dispute that as well, because, frankly, when Don Willis was cross examined about the D's on the will and whether or not Mr. Or the T's on the will and whether or not Ted Turner had actually written the will. She was asked specifically to help authenticate the handwritten codicil on the will. But I will note that the court of criminal appeals, as I said, on direct appeal did not. And we note that in our pleading did not indicate that. That the will was at issue. So substantively, that doesn't matter. But they also didn't address the confrontation issue on plain error review. They were only reviewing for plain error and they reviewed for hearsay and whether this was hearsay. And they concluded that it was not offered for the truth of the matter asserted. Crawford goes unmentioned as far as that claim, that plain error claim goes. Roberts, Street, they simply weren't concerned with that because they were concerned with the plain error hearsay aspect. You make reference to the lack of a limiting instruction. Assuming that there was some kind of error in this case, would the limiting instruction have cured any such defect? In the hypothetical situation, I believe, given what the Supreme Court said in Street, which was the jury is presumed to follow a limiting instruction that I would have to confess. Yes, that would that would essentially, barring some other circumstance, cure it. Instead, what we had here was we had the flip side. We actually had an instruction affirmatively telling the jury here that all the evidence that they heard, all of the exhibits that were admitted and all the testimony of witnesses was the evidence. They did not see the limiting. They, in fact, received an instruction that this was evidence. And what we have here is we have an eight and a half by 11 piece of paper, handwritten will by Mr. Turner at the bottom of which he has written in red ink reaffirmed just in case Don Deardorff really is crazy. Now, if this was being offered to establish an investigative process that went on, it's unclear why four witnesses would be needed to do that rather than just the police officer who was investigating. But it's also unclear why a blown up version of it would be needed as a visual aid for the jury. I mean, if what we're talking about is the reason I went and investigated Mr. Deardorff was because I found a piece of paper with his name on it. Fair enough. But that's not what happened here. What happened here was they started with their first witness and they said, do you recognize this? Yes, this is his will. Do you recognize the handwriting on it? Yes, I do. Now, they did not specifically ask three of the witnesses about the contents of the codicil, but the console itself was admitted as an exhibit. And as a result, what we had here, and you can infer it from the state's closing argument and rebuttal closing argument here, they were saying that this was being offered for the truth of the matter asserted. Why isn't the truth of the matter whether Mr. Deardorff is really crazy rather than that he committed the murder? Well, on the surface, it might be. But in reality, the only reason you would leave a statement on a will would be something to do with your own death. And so the idea is this was not a probate matter involving whether or not Mr. Deardorff was competent to be a devisee in the will or whether he was competent to be the executor of the will. Maybe if that had said, I'm leaving out my daughter because I believe she's mentally ill. You know, that would be the truth of the matter asserted for that purpose. But here what we have is the only reason you would write something on a will like that is to imply that if something happens to me, this will will need to be used. And the reason this will need to be used is because of Donald Deardorff. And I'm reaffirming it because that's what I believe will happen to me. I will be murdered. But surely you would concede, as Judge Pryor has just asked, you know, that the statement does not reference murder. It says Deardorff is really crazy. So what if we took it back a little bit, reaffirmed on this date just in or reaffirmed on this date because I just sued Don Deardorff. Is that enough? Because you're saying the only reason you reaffirm anything is in case that person murders you. Well, I think in that case, I think it would still be a problem because the idea would be this is exactly why I'm doing this. The implication from it, and it's exactly what the state argued in closing argument, is the implication from that is I name the man I fear and who will do evil to me. And that's why he left it. And that's why it's there. In the absence of the state's argument, and had this just been introduced without comment, kind of like in Street where they introduced it. And in fact, in Street, the state specifically cabined their questions to directly avoid the problem of the truthfulness of the co-defendant statement. And what they also gave two limiting instructions. And so the idea here is we've got this implied accusation from beyond the grave. This is essentially the same as a person leaving a note behind that says, if I disappear, my husband did it. If I disappear, look at so and so. And while that might be investigatively helpful to law enforcement, it's certainly not relevant to a jury for purposes of determining the elements of the crime. But what about the fact that if I understand it in terms of the preponderance of the evidence that is allowed at some stage at the trial level, isn't it the rule of forfeiture by wrongdoing? Why is that not applicable here? So as we pointed out in our reply brief, the rule of forfeiture by wrongdoing cannot apply here. And Giles versus California is directly on point. In 2008, the United States Supreme Court addressed, I believe my friend cited a 2007 case from this court, but in 2008, the United States Supreme Court held in Giles that the forfeiture by wrongdoing exception did not exist at the founding, first of all, and therefore could not have been anticipated by the founders. But second of all, did not exist in the context outside of murdering a witness directly for purposes of preventing them from testifying outside of that realm. Did not did not even appear in a reported decision until 1985. So Giles v. California forecloses the forfeiture by wrongdoing. This is the quote unquote ordinary murder case that they talk about, where a witness who might have had something helpful to say in a prosecution for murder is the murder victim. But it does not imply that that is a forfeiture by wrongdoing. What essentially would have to happen is, assuming forfeiture by wrongdoing could apply to the Sixth Amendment, it would not apply in a case like Mr. Deardorff's. So the Supreme Court has told us in Ohio v. Clark that a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. So here we have a statement that doesn't reference murder, that says he's really crazy. And the statement predates the murder by two months. How is this a situation where the primary purpose was testimonial? He's supposed to—Mr. Turner's anticipating that he's going to be murdered and there's going to be a trial, and this, in fact, is his testimony at a later date? Yes. So in our briefing, we point out that this is essentially a dead man's switch. This statement means nothing in the absence of a murder. The statement is essentially, I suppose, a statement anticipating something that could happen. But once the murder happens, the purpose or the meaning of the statement becomes clear. And the meaning of the statement is, if I'm dead and it's not natural causes, Don Deardorff did it to me. And that's why you'll be doing this. And he knew that this will would be used by some. He knew that this will would be used. This is a sort of formalized document that Justice Thomas talks about in his concurrence in Williams v. Illinois. That was a plurality decision, and in his concurrence, Justice Thomas, that would control. And in the concurrence, Justice Thomas essentially says, look, I believe that this is would be inadmissible under the Confrontation Clause because it is being offered for the truth of the matter asserted. This is the Selmark Lab report. However, it does not bear the indicia of formality that the testimonial rule is require is requires. Now, here we have a will, a last will and testament, which is about as formal as you can get. It is something that you have signed knowing that it's going to be used only in the event of your death for purposes of determining how your estate is settled, et cetera. And then he bothers to write on it, reaffirm just in case Don Deardorff really is crazy. And we don't need to infer what this means because we have the prosecutor arguing what it means. And the prosecutor said it's what he left. That's what he has left in his will and why he left it. And then he tells the jury he didn't just put it down. He wrote it in red. You can't miss it. It's designed so you can't miss it. If that's not the truth of the matter asserted. And if that's not the truth of the matter asserted that Mr. Deardorff is the killer, then I don't know what other purpose it could have served in this particular case. Now, in a given scenario where maybe somebody comes across this and Ted Turner has it's all situational. And Ted Turner had been killed by someone else, maybe on videotape by his girlfriend. This statement wouldn't have any relevance in the courtroom other than perhaps to serve as some sort of defense argument for reasonable doubt. However, in this case, this is the only thing that takes Mr. Deardorff, places Mr. Deardorff in the position of being the trigger man as opposed to Mr. Peacock beyond a reasonable doubt. Because you have two people who knew where Mr. Ted Turner's body was. You have two people who kidnapped Ted Turner. You have one trigger person. And they had, as they pointed out, a drug dealer from Miami, Florida, a thug. And then they had a fellow who had, I believe, approximately two dozen felony convictions for fraud. He couldn't actually remember how many he had. And then you had David Whetstone, the prosecutor, saying, look, you don't have to take their word for it. You don't have to take the cross-examined witness's words for it. You've got Ted Turner. So you mentioned that what if this statement, if his handwritten note on the will had indicated that, or we had it on video, that somebody else had killed him. And so in that case, it might be helpful to the defense. So in light of that statement that you just made, how can you show that counsel's performance was deficient when counsel used the will to help support Deardorff's defense of innocence by arguing the circumstances surrounding their location and discovery of the will didn't make sense, and the more logical explanation was that Peacock found the will and then wrote the note to frame Deardorff? Well, we don't have any indication as to why counsel did not object. But we do know here that this – it does not appear that any reasonable counsel would have used this in that way. That appears to be sort of an after-the-fact justification for why it was there. Except it wasn't the – I mean, Deardorff was maintaining and is still maintaining his innocence. So, you know, in a situation where, okay, the file on Deardorff's storage unit is gone, but it doesn't make sense to leave the will out, wasn't that part of Deardorff's defense that this shows it has to have been somebody else? Because if it had been me and I'm cleaning up all of the situation that puts me anywhere close to him, why would I leave the will, you know, out in the open? So how is it not reasonable when you're proceeding under an innocence defense to use the will to Mr. Deardorff's advantage? And how does that not doom your prejudice claim? So it's not reasonable because what they had was evidence that Millard Peacock and Donald Deardorff were kidnappers, robbers, burglars. They were both in on it. And no amount of protestation of innocence would have been reasonable. The only reasonable argument here is this is a felony murder. Mr. Deardorff is guilty of felony murder because Mr. Deardorff was involved in a kidnapping, and the evidence is pretty clear. Mr. Deardorff was involved in a robbery and a burglary, and Mr. Deardorff and Mr. Peacock split some of the proceeds of the money that came from Mr. Turner's credit card accounts. But part of the problem you have is that post-conviction counsel didn't question trial counsel about the handwritten note, right? And the Supreme Court has said the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional behavior. That's Burt versus Titlow. So how do you get around that problem? Well, how I get around it is, again, I do not believe it's our position that no reasonable counsel would allow an unimpeachable, uncrossable statement accusing a person of murder to be admitted to evidence without objection. Now, once it gets in, once it gets in, perhaps over objection or perhaps with a limiting instruction, you can certainly shift your position and decide, hey, here's what we're going to do. We're going to go ahead and argue that this creates a reasonable doubt. But there simply was no reasonable basis for allowing an uncross-examinable witness to essentially provide unimpeachable testimony against a person where it's a whodunit. It's a he or he. One or the other did this. And we've got the tapes from the jail in which Mr. Deardorff is talking, which defense counsel had, in which Mr. Deardorff is talking to his mother, and he implies that Mr. Peacock is the real killer and that Deardorff was involved and Deardorff would become an accessory after the fact. So counsel did not have any evidence to assert absolute innocence here. And so all counsel had was to argue to the jury a lesser-included offense, and the lesser-included offense here would be felony murder. And there's simply no plausible way. And counsel did not do anything to determine whether or not this handwriting was Mr. Turner's handwriting or not, which is obvious from the record because when you look at the record, there's a cross-examination that occurs in which some of the will is handwritten and some of it is cursive. And trial counsel tries as best they can to attempt to show that this is not Mr. Turner's handwriting. And what ends up happening is the prosecutor comes back and says, well, isn't it true that the two Ds there, one is cursive and one is handwritten, and doesn't it look like it's Mr. Turner's handwriting? And what ended up happening was the witness, it was Ms. Goodwin. You see the third line where he refers to David Turner, his son? Yes. Do you notice any difference in the D in David Turner and the Don Deardorff in red at the bottom? Yes. Does that appear to be a different handwriting to you? It does look different to me. Yes. That was defense counsel. The state comes back. Mr. Doar asked you, is there a difference between the D? Do you got the will there? Yes. The D in David Turner and the D in Donald Deardorff. And your testimony was there is. Yeah. Are you familiar with the word cursive, cursive handwriting? Have you heard of that word? Yes. What does that mean? It's more fluid. David Turner is cursive, isn't it? I'm sorry. Printed, isn't it? Yes, it is. And Donald Deardorff is cursive. Yes, it is. Does that suggest to you there are two different people writing this thing? No. Or that the other person just printed one and cursive the other? Why would counsel come in if their entire case was based on the idea that Millard Peacock was framing him for the murder portion of the crime spree, but not bother to consult with a forensic handwriting expert or anybody who could come in and say, yes, we've compared the handwriting and we can tell you, ladies and gentlemen, the jury that this was absolutely not the handwriting of Ted Turner. There's simply no reasonable counsel would go in on a half-hearted cross examination after permitting this to come into evidence, especially knowing the weakness, the overall weakness in the state's case for intentional murder. The state's case here was very strong for felony murder, for robbery, for burglary. So we would submit that regardless of what counsel would have testified to at a hearing, regardless of what counsel's justifications would be, no reasonable counsel would have done so. Now, we would note that the Court of Criminal Appeals on Rule 32 review made an unreasonable determination of the facts in concluding that because evidence relating to the notation on the will was not offered for the truth of the matter asserted, it did not offend the confrontation clause. As noted, it's very clear that the state was relying on this for the truth of the matter asserted. An unreasonably applied, clearly established federal law by failing to address the instructional issue, the failure to give a limiting instruction, failing to address the applicability of street.  You would concede, though, that this will could have been offered not for the purpose of proving the truth of the matter asserted, say the cops found this, this is what led them on the path to Deardorff. You would concede under those circumstances it could have come in, right? Well, I will say yes with a limitation, with an explanation. And the reason I say that is because what this Court has held is that generally speaking, that type of investigative purpose introduction of a statement should not name a person. And so in this case, it does name a person. I think probably the preferred method, assuming it's ever relevant as to why, when the defense is not, they should not have been investigating me, they solely focused in on me, etc. When that's not a defense that's been proffered, then there's nothing to rebut with regard to the thoroughness of the police investigation concerning the person. And so what I would suggest is that the way to do that is we looked into his businesses and we determined that he had disputes with a couple of people, and one of them was Mr. Deardorff. And then as we went on, we determined more and more evidence pointed to Deardorff, because what we had in the record here was they had two disgruntled renters. They had a person who had rented a home, and they had a person who had rented a storage locker. Deardorff is a storage locker person. So they did have indications that could cause them to go and investigate these people. And they did, and they decided Mr. Deardorff was the person. But admitting a statement in which they implicitly accused Mr. Deardorff of the murder for purposes of establishing why the investigation did what it did was improper. Let me ask you a question about how the state used the will during closing. And you have raised concerns about that. How was any error in this regard not harmless because the jury was instructed that what the attorney said in closing is not evidence? Well, because the jury was affirmatively instructed within that same instruction that all of the exhibits were evidence. And so here we have the exhibit, and he's drawing their attention to the exhibit. Now his argument, had he said you should believe me, I'm telling you right now that's his thing and that's what it means. But what he was doing was he was drawing their attention to an exhibit that had been admitted without limitation and without instruction, and in fact the instruction said that was an exhibit. As far as the jury was concerned, if we assume they follow the law as instructed, they could have gone back and deliberated and said, well, you know, we have our doubts. It could have been Mr. Peacock. It could have been Mr. Deardorff. But you know what we have here that tells us it's not Mr. Peacock? We have Ted Turner himself. And why would Ted Turner lie about that? So what we have here is we have an exhibit that was admitted without limitation and with an instruction that it could be considered for the truth of the matter asserted. So that does negate the idea that it's simply an argument or a creative or colorful argument by the state. What about your mitigating evidence claim or argument on appeal? So in denying relief, the district court below determined that Mr. Deardorff did not want to present mitigation at all and based that on the idea that it was going to believe the testimony of trial counsel over Mr. Deardorff's affidavit. And what the state court held was trial counsel said he did not want mitigation but did not really get to the heart of the issue of Mr. Deardorff having an affidavit that said the exact opposite. Can we even consider the affidavit, though, because it was never entered into evidence? It was only proffered. Can we consider it under Cullen v. Pinholster? That is an angels on the head of a needle question, in my opinion, Your Honor. And that is that if somebody goes into proff or something and the court puts it into the record without putting it into the record and allows you to proffer it but then does not consider it or says they're not going to consider it, to what extent does this court then get to review that? I would say that given the fact that he attempted to introduce it, there was no apparent state measure that would prevent it from being introduced that this court should consider it and can consider it because it was essentially fairly presented to the state courts. The state courts had an opportunity to look at it and decide on it. So now you have the trial counsel says something versus Mr. Deardorff. It seems like a credibility determination that needs to be made, and how are we supposed to approach that? Well, I suppose what I would say is that there was no credibility determination made here because the state courts refused to consider Mr. Deardorff's side. So it was more like here's the evidence, nothing else. And so what ended up happening was the courts, in our opinion, made an unreasonable determination of fact by not addressing and dealing with the fact that Mr. Deardorff had made a conflicting affidavit. And I would note that there needs to be some sort of process in the state court for this court to give respect to the state court's decision. And a state court that does not allow a petitioner in a post-conviction capital murder case to present evidence in support of a claim is not the kind of court that's functioning and deserving of 2254 deference. Thank you. May it please the Court. Robert Overing for the State of Alabama. Deardorff raises two Strickland claims that were decided on the merits by the state courts. Under AEDPA, this court may grant relief only if every fair-minded jurist would agree that every reasonable lawyer would have made a different decision, and that would have changed the outcome. Deardorff cannot clear that high hurdle, especially when both of his claims challenge factual findings that are entitled to deference. On the Confrontation Clause claim, Deardorff was tried in 2001, prior to Crawford, but his entire argument here and in his briefing rests on Crawford and its progeny. That is fatal to his claim because this is a Strickland case, not a Crawford case. The question is whether trial counsel acted reasonably by not objecting on Confrontation Clause grounds in 2001. So you're saying that if this had happened after Crawford, the state would lose on this claim? No, we'll argue that under contemporary Confrontation Clause jurisprudence, that the state should win as well because it would require an extension of Crawford. But both, that the later cases should not come into play when judging trial counsel's actions in 2001, and even if they did, that there was no Confrontation Clause problem here. I mean, so your friend on the other side quoted the prosecution's closing argument. It says, he, Turner, named the man he thought might do evil to him. The codicil references that they were having issues in terms of, you know, the storage unit, and his girlfriend was part renter of the storage unit, but he doesn't mention the girlfriend. He doesn't mention anyone else but Deardorff. How is that not testimonial? Well, under current case law, the Supreme Court has dealt with police statements, statements by victims to police, 911 calls to police, and only as recently as I think Judge Branch referenced Ohio v. Clark, was the first Supreme Court case to say, post-Crawford, that a statement to someone other than law enforcement officers could be testimonial. And so I think at best it's unsettled under contemporary doctrine whether this would be testimonial. Crawford left this question wide open. In the very last paragraph or two of Crawford, the Court says, we are not going to decide definitively what testimonial even means at this stage, but we know at least that these types of statements to law enforcement are testimonial. And this will here bears no resemblance to a lengthy 911 call to police that describes a crime that's actually happened already in the past that points to a particular criminal, and the will isn't written to anyone in particular. Well, then to Deardorff's point, why did you need multiple witnesses in the prosecution to include during its closing argument references to the codicil that only mentioned Deardorff? Well, Your Honor, it does come up in the first couple of witnesses to investigatory background. I think the State Court's reasoning on that is a genuine and accurate description of what happened at a two-week trial. You have the first witnesses talking about how the investigation began, and why did police start looking at Deardorff? Well, the daughter found this will sitting on the table. But what was the purpose of an overblown exhibit identifying that provision within the codicil if it was just for purposes of establishing why the police were interested in him in the first place? Well, Your Honor, if you look at the trial transcript, the prosecution is blowing up exhibits constantly, and there are multiple places in the record where, whether it's a photo of something of a crime scene or of a document, and they're saying, blow that up, make it big for the jury. And so I don't think it was quite as special as Deardorff would make it out to be here. And then the reference in closing argument, what we heard today was one paragraph out of about 60 pages of trial transcript of a closing argument. And so it wasn't this kind of smoking gun or, as counsel put it, the only thing other than Peacock's testimony. It was a small part of a comprehensive presentation by the prosecution. This was two weeks. They had over 100 exhibits. They had something like 100 witnesses on the witness list and a mountain of evidence. And the district court here found that there was no prejudice because there was a mountain of evidence against Deardorff and that the will just wasn't a big part of the presentation. And besides Peacock's testimony, you've got the fact that Deardorff was caught with $20,000 in bankrupt bills traced to Turner's bank account, that he had paperwork for Internet orders for car parts that were placed in Turner's name, using Turner's credit cards, and those car parts matched cars that Deardorff owned. And then in the police station, when Deardorff is confronted with all of this, he says, well, the jig is up. And all of that would support a lesser included finding that he was involved but not the trigger person for the actual murder. It would support at least that, and it would also go potentially to motive, because you have testimony that Deardorff wanted to get back at Turner and that he wanted to get back at him for this ongoing feud. But there is more specific evidence than just the Peacock testimony about where Turner's body was. And Turner's body was found in close proximity to a place that Deardorff lived and often hunted. There's another inmate who testified that Deardorff had told him details of the murder and that turned out to be consistent with Peacock's statement. And then you have an inmate who described generally where the body was, and that turned out to be true as well. So when they say, you know, it was just jailhouse snitches, well, their testimony was corroborated by other facts in the record. But again, would you not agree that all of that evidence proves that Deardorff was there when the murder occurred, but it doesn't establish that he was the one who pulled the trigger? Well, Your Honor, neither does the will prove that fact. I don't think the will went to the fact that Deardorff and not Peacock had to be the killer. If anything, the will was corroborating of other facts that weren't really in dispute, the fact that Turner and Deardorff already had this ongoing feud, that there had been litigation, that Turner had a civil case against him, a default judgment, and was trying to collect on it thousands of dollars, and to seize all of Deardorff's property that was in Turner's warehouse. He had cars and car parts, the things he needed to make a living. And Turner was trying to take that from him. And so the idea that this sentence fragment that Deardorff could be really crazy told something shocking and surprising that the jury didn't already know, I think just isn't consistent with the record where there's lots of evidence that these two men butted heads and that there was animosity between them. And so that is a potential motive for capital murder, that the will didn't add too much more that wasn't already in the record and not in dispute. And so it's just not quite right to say it was the only thing other than Peacock's testimony. And then, of course, we have Peacock's testimony. And so in light of that testimony, the other inmates, they had jailhouse phone calls between Deardorff and his mother where Deardorff said, I know where the body is. And I suppose to your point, some of this evidence could go to a lesser crime, but it could also be part of a pattern that he had committed these crimes and then needed to get rid of the body. And and it was his plan. So the district court here found a lot of evidence. I think the court described it as an abundant evidence heard by the jury and ample evidence connecting Deardorff to the crime. And I don't think there's a serious challenge here on appeal to that finding, which the result of is that Deardorff has not shown strickland prejudice, because even if the will had been objected to and the objection had been sustained and kept out, he still would have been convicted. Because the Alabama Court of Criminal Appeals did not rest its decision on prejudice, if we got to prejudice, would we review that de novo? Yes, I think it's it's mixed. So the ultimate determination is de novo. But those descriptions of the evidence and the findings of the district court that led to the prejudice determination would be reviewed for clear error. But this court can uphold the judgment below based on on prejudice or deficiency. So long as the state court decision wasn't contrary to or an unreasonable application of clearly established law. I think this court decided in pie that any reason or rationale for the ultimate conclusion of the state court that there is no ineffective assistance of counsel for failing to object could be one that the federal court relies on to deny relief. So but we don't think that the court even needs to get to prejudice here because the claim relies on all of this post Crawford case law, which can't be held against counsel. And this court has said time and again that counsel is not constitutionally required to predict a change in the law. For example, in Ramboran versus secretary of D.O.C. This is not a case in our brief, but 821 F. Third, 1325 is a 2016 decision. The court said effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop. And it had a series of cases to that effect. Sometimes the court has said that there's a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate change in the law constitutes ineffective assistance of counsel. And so if there's a question about whether it would be testimonial under all of the post Crawford jurisprudence, that can't be the ground for a Strickland claim. And before Crawford and all this, the rule was Ohio versus Roberts, and it was much more lenient. All that the prosecution had to show to get an out of state courtmen out of court statement into trial was some reliability had to show that it was either fell within a hearsay exception or that it had guarantees of trustworthiness. And Deardorff hasn't really argued that the will would have been excluded under that old test. And in our response brief, we have a lot of arguments about how this would have fit hearsay exceptions such as present state of mind, the forfeiture exception, or it would have been non hearsay or it would have just been reliable because Turner had no motive to lie about why he was amending his will. Multiple witnesses corroborated the handwriting. And so under the old regime, pre-Crawford regime, which was in effect in the 2001 trial, this evidence would have gotten in. So there's no deficient performance for failing to object when that objection would have been futile, and there's no prejudice for the same reason. And this really takes the wind out of the sails of the reply brief when they essentially concede that this might have been admissible under the hearsay rules, but hearsay isn't the end all be all of confrontation clause jurisprudence. Well, that's true now post-Crawford, but under Ohio v. Roberts, a hearsay exception would be enough. And so if this court thinks that the will might have exhibited a present state of mind, such as fear, then that's a hearsay exception and it would have gotten in. And there's a great academic question of whether it would get in if the trial were held today. I don't know. But under ADPA, talking about a trial that happened 23 years ago, the court doesn't need to reach that question. Even under the post-Crawford doctrine, Deardorff still loses because the Supreme Court has left open the meaning of testimonial. And so it would require an extension of Crawford in order to apply to the facts at hand. And any time you have an extension, you don't have an unreasonable application of clearly established law by the Supreme Court. The Supreme Court said in White v. Woodall that if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition, the rationale is not clearly established. Well, my understanding is that testimonial has been generally defined as an affirmation made for the purpose of establishing or proving a fact. And you're saying based on that general definition of testimonial, we would still be reaching beyond the case law to find that in this case, reference to the carousel was testimonial? That's right, Your Honor. So the Supreme Court has established a general rule. And when we're applying a general rule in the Strickland context—well, two things about this. One, in the Strickland context, a general counsel is not held to an exacting standard when the rule is so abstract and general. But then under AEDPA as well, it's not clearly established law if the Supreme Court hasn't applied that general rule to facts that resemble this case. And none of these recent Supreme Court cases I think one cited was about a lab report, right, just far afield from a handwritten note on a will by a man predicting potentially a future event. I would like to know what the Supreme Court would think about that, but there's just nothing in the recent cases that gets even close. So you want this case to go there? In a future case, I would love to have the Court's thoughts on that, but this isn't the case for it. And Your Honor had a definition of testimonial. I think the Supreme Court said when the primary purpose of interrogation is to establish or prove past events potentially relevant to a prosecution. That was how the Court put it in Ohio v. Clark. And establish or prove past events—I mean, Turner couldn't prove his murder when he was writing two months prior to the events. And so I think it would fall out of the definition of testimonial, even if it happened today. In the reply brief, Deardorff relies on Giles v. California, and this case even emphasizes our point. The Court said statements to friends and neighbors about abuse and intimidation wouldn't be excluded by the Confrontation Clause because they're not testimonial. That's on page 376. And then the Supreme Court never addressed statements to anyone other than law enforcement until Ohio v. Clark. So it's just a deeply unsettled area of law, and it can't be the basis for habeas relief in federal court on that ground. Lastly, on the confrontation issue, is the forfeiture by wrongdoing exception. And it was not deficient performance to decline to object when any confrontation right against the will was extinguished by wrongdoing. And I just heard counsel make the same argument in the reply brief again that, well, Giles v. California foreclosed this argument. Well, that was in 2008, seven years after the trial here. And so it just shows clearly that it was clear that counsel had an obligation to predict that future change in law. And under Strickland, counsel has no such obligation. At Deardorff's 2001 trial, it wasn't obvious that a defendant needed the specific intent to eliminate a witness in order to forfeit his confrontation right. For example, this court decided in 1985 in United States v. Rucco, 765 F. Second 983 at page 995, that Rucco waived his right to cross-examination, his right to cross-examine Benitez by killing him. And it was a very general statement. It wasn't that he had a specific intent to disappear a witness. It was a heat of the moment gun battle with police. And so if merely killing a law enforcement officer allows the testimony to get in, even if there's no ongoing prosecution or any court action of any kind, then it seems that the law in 2001 would have allowed a forfeiture by wrongdoing exception at this trial. And then even if the court should apply a later case law, I think it's debatable under Giles whether Deardorff forfeited his right to confrontation here because he had committed two days worth of crimes against Turner. He had held him in his home. He assaulted him, stole from him, and kidnapped him. And then he was left with a witness after two days of committing all of these crimes. And I think it's fair to say, based on the record, that Deardorff decided to kill him to get rid of a witness. And that's the test under Giles. And I think the record bears that out. Initially, Deardorff wanted to let Turner live, according to Peacock's testimony, because he said he wanted to leave him broke, but then later seemed to change his mind and killed him. And one of the inmates who testified against Deardorff said that Deardorff had to dispose of Turner because Deardorff said that kidnapping would be the same as murder as far as the time that he got. And so he was already contemplating that he could be investigated or prosecuted for kidnapping. And he figured, well, I might as well tidy up loose ends and get rid of the witness to my kidnapping because I'm not going to be liable for any additional time in prison. So it looks like Deardorff did get rid of a witness against his crimes, and I don't see an alternative explanation for why he had to be killed if Deardorff's motive was just to steal. So I think the forfeiture by wrongdoing exception could have applied here. And at least it's not obvious that counsel should have predicted at the time of trial that seven years later the Supreme Court would establish new case law that would put that exception out of bounds for the prosecution. So in summary on the confrontation issue, I think our big picture point is that this is a Strickland case. It's not a Crawford case. And so the law at the time does not make it clear that counsel had an obligation to object at that point. And the objection probably would have been removed. But even if the court applies post-Crawford law, then the will probably – it could have gotten in. It's not clear it's testimonial. And under AEDPA, it's certainly not contrary to clearly established law. Then we have the argument that there's no prejudice because there was a heck of a lot of evidence against Deardorff. And the district court here recounted all of that evidence in good detail on pages 35 and 37 of the district court decision. And then finally the forfeiture by wrongdoing exception in which Deardorff's argument relies on post-trial cases. And even under those cases, it's an open question. Now I'd like to move on to the mitigation argument. And Your Honor asked if it was right to challenge the state court decision based on factual findings that – based on evidence that was not submitted into the record. It was only a proffer in the state courts. And the answer to that is certainly no because under AEDPA D2, the question is – 2254 D2. The question is whether the decision was wrong in light of evidence that was presented in the state court. And so Deardorff's affidavit was not presented as evidence in the state court. It was only a proffer. And the Supreme Court has said as much in Pinholster – Cullen v. Pinholster and Shin v. Ramirez. And that makes sense because otherwise the federal courts would be looking at essentially new evidence for the first time that the state courts did not consider for its evidentiary value. And there's a rule for when you get a new hearing and get to introduce new evidence in federal court, that wasn't satisfied here. And so counsel's response to that is, well, it's not really fair that the state courts didn't consider Deardorff's side of the story. But that's a separate claim, and that's not the claim that we have here, which is ineffective assistance for failing to put on a good enough penalty phase mitigation case. So that really diffuses much of the challenge on factual grounds to the state court's conclusion. And just to recount that a little bit, Deardorff was extremely non-cooperative, and his counsel testified that he didn't want mitigation. He would not talk to the mitigation expert. He just didn't want any mitigation evidence presented. And it wasn't just the word of counsel. The state also had the probation officer who said, well, I tried to create a pre-sentence investigative report for the sentencing judge, and Deardorff wouldn't even fill out the form. He filled out half of the first page of the form, and he wrote, I am innocent, and he wouldn't help in the defense of his own case. And that was after the jury had recommended a death sentence. The counsel's testimony is also corroborated by Deardorff's strategy to assert innocence throughout the penalty phase. And so defense counsel went with it, and they said he was innocent in their opening and closing and said, you, jury, will regret this guilty verdict. We'll prove that he's innocent. And they pursued a residual doubt strategy. And then Deardorff's own testimony said, I'm innocent. His mother said, he's innocent. And then Deardorff said in front of the sentencing judge, I'm innocent. And so that was the whole strategy. And so it makes sense in light of that strategy that Deardorff didn't want mitigation. Well, it might make sense, but my understanding is the case law says that doesn't undermine or negate or eliminate trial counsel's responsibility to still do some kind of investigation as to mitigating evidence. That's right, Your Honor. But it does significantly narrow the scope of defense counsel's obligations. And so the state submits what they did here in light of that non-cooperation was about all they could. They went around their client, in a sense, by asking the court for costs to hire a mitigation expert, which they did. And then the expert spoke to Deardorff in prison, tried to speak to the parents. And I think the best, probably the best document in the record was that there's a letter from the mitigation investigator. This is in volume one of the record in the district court at page 149, in which he writes contemporaneously before trial. He says to defense counsel, I drove six hours down to Mobile and back, and I attempted to interview Donald's mother and father, who refused to talk to me. And so was it unconstitutional for defense counsel not to hire a different mitigation expert to go down and try to talk to the parents who completely stonewalled the first one? No. So there's a mitigation expert who made an attempt. Defense counsel were able to get some school records. But ultimately, they didn't see any of the kind of red flags that would make a compelling mitigation case. And sometimes there just isn't anything you can say about a depraved capital murderer. So they went with a residual doubt strategy, which was the one their client wanted and, as this court has said, can be one of the more effective strategies at sentencing. The upshot of all this is that it wasn't efficient, and there's no prejudice from lack of an additional investigation, which wouldn't have revealed anything in light of the client's non-cooperation. They cite—Dierdorf cites in a brief medical—that Dierdorf had head injuries as a child and that they should have gotten the Navy records and kind of a hodgepodge of things that don't amount to a compelling narrative at sentencing. It was within counsel's discretion to choose a residual doubt strategy after they had spent two weeks with the jury trying to create that residual doubt. And it didn't work at the guilt phase, but it might have worked at the sentencing phase. And these were extremely active lawyers, the defense counsel. The first hundreds and hundreds of pages of the record here include all kinds of pretrial motions and suppression motions and letters to the FBI and objections to the use of the jailhouse calls. And the lead counsel had tried dozens of felony cases and at least several capital cases as well. And so it wasn't that they didn't know what they were doing. They had experience, and they made the choice with this client in this situation to pursue residual doubt. Even the mitigation that is described just doesn't rise to the level of the kind of mitigation that counsel is constitutionally required to present. So in the Supreme Court's case law and this court's case law, finding ineffective assistance in the penalty phase, usually you have severe childhood abuse. You have some corresponding mental health problem, develop some trauma from that, and you see red flags and a lot of evidence to back that up. And when counsel sees that, then it triggers additional obligations. But there's nothing like that here. And so it just there were some lamentable things about his childhood. But by all accounts, he grew up to be a functioning adult. And like his mother said in the actual sentencing hearing, a relatively normal childhood. And then finally on prejudice, the proposed mitigation just pales in comparison to the brutal nature of this crime, which the state courts described as a prolonged psychological torture in which a father, a Christian minister and businessman was locked in his closet for two days, bound, gagged, kidnapped, blindfolded, and drove into the forest, shot in the head multiple times. This was a shocking tragedy. The jury sentenced Deardorff to death, and none of the meager mitigation offered now would have changed that. This court should not undo the state's and the people's judgment. It should affirm. Thank you. Mr. Hahn, you have five minutes left for rebuttal. Thank you. Just a word in the back, or forward. I can't remember which one it is. Let's go with the district court's decision with regard to prejudice on the Crawford, or on the Sixth Amendment claim. Here's what they said at page 37. Considering the abundant evidence heard by the jury, it cannot be said that the outcome of Deardorff's trial would have been different. That's the wrong standard. Now, whether they were shorthanding or not, that's the wrong standard. The standard is, is there a reasonable probability that but for trial counsel's deficient performance, the result would have been different. And so here, while this court only needs to review de novo for that because it is a mixed question of fact and law, I wanted to point that out. I'll also note that it's in conflict with page 86 of the district court's decision discussing the residual doubt claim, arguing also the evidence or finding, also the evidence at trial, while convincing, was not supported by eyewitnesses, conclusive forensics, or unquestionable evidence, which further supports the reasonability of presenting a residual doubt argument. So here we have the district court below, who you're going to be reviewing this de novo on, saying on one hand, it's a very strong case against Mr. Deardorff, and therefore he wouldn't be prejudiced by this deficient performance. But on the other hand, saying, well, of course, this was not deficient performance in the sentencing side because there was so much doubt. And it would have been reasonable for trial counsel to have done that. That's simply not reconcilable. I will note with regard to the Crawford issue, the state court, the state court, the last reason state court decision, applied Crawford to the postconviction claim. Now, what that means ultimately to this claim, unclear. But I will note that it also addressed Street, which is the case that we have here. And Street says very clearly, if the jury had been asked to infer that Peel's confession proved that respondent participated in the murder, then the evidence would have been hearsay. And because Peel was not available for cross-examination, confrontation clause concerns would have been implicated. And then they talk about Bruton, which is a case from the 1960s, which involves whether or not you can redact information identifying a co-defendant from another co-defendant's confession. And they say, moreover, unlike the situation in Bruton, there were no alternatives that would have assured the integrity of the trial's truth-seeking function and eliminated the risk of the jury's improper use of evidence. What happened in Street is you have a person who comes in and affirmatively says, I did not make that confession to the sheriff. The sheriff is lying. He spoon-fed me the answers from my co-defendant's confession. And that's why my confession matches up with details. And so he made an affirmative representation to the jury that his statement was not true. And then in rebuttal, the state came in and said, hey, we're going to introduce this statement because we need to show that things that Mr. Street said were not in his co-defendant's confession. And we need the sheriff to deny that it was a coerced or otherwise spoon-fed confession. And they note, because Peele's confession was introduced to refute respondents' claim of coercive interrogation, Peele's testimony would not have made the state's point, and respondents' cross-examination would have been ineffective. They note, the state introduced Peele's confession for the legitimate, non-hearsay purpose of rebutting respondents' testimony that his own confession was a coerced copy of Peele's statement. The jury's attention was directed to this distinctive and limited purpose by the prosecutor's questions and closing argument. So, unlike here, we have the flip side, we have the mirror image there. In Street, the prosecutor did the right thing and complied with the Confrontation Clause jurisprudence in effect in 1985. And I would note that in concurring, Justice Brennan and Justice Marshall noted, also, the record contains no suggestion that the state was engaged in any improper effort to place prejudicial hearsay evidence before the jury. So, again, regardless of whether Crawford applies or Street applies or Roberts applies, this was a Confrontation Clause violation that any reasonable counsel would have seen. And I will go back to the definitions that Crawford has that Judge Abudu referenced. And in Crawford, they noted extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions. And another category would be, quote, statements that were made under circumstances. And this is what Judge Abudu was getting at. Under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use in a later trial. Here we have a person writing out a legal document that he knows is going to be used in a probate court, and then he writes an accusation on it. The only purpose of that accusation would be to accuse this person of a crime and be used against him at a trial. And that's exactly what happened here. But regardless of if Crawford applies to counsel's deficient performance or Street applies, it was deficient performance. And this Court reviews the prejudice finding. De novo, we would note that given the fact that every piece of evidence that points to Mr. Deardorff points to Mr. Peacock, and the only difference between the two of them is the statement. And we would say that you cannot have confidence in the outcome of the proceeding based on that. And thank you. Thank you to both counsel. Court is adjourned. All rise.